JOHN McLEAN, administrator, *vs.* ADDIE C. WEEKS.

Lincoln, 1875.—July 1, 1876.

*Probate practice. Fraudulent conveyance.*

One to whom an insolvent person has made a gift of money or other personal property, is answerable to the administrator of such insolvent for the value thereof in a suitable action—where the gift is in money, or has been converted into money, in an action for money had and received. In the absence of intended fraud, the gift is valid as against heirs or subsequent creditors, and the interest of the donee will be regarded in the distribution to be made by the administrator, under the direction of the probate court; which is the proper forum for the adjustment of the rights of the various parties interested in the fund.

The proceedings in probate and insolvency, and the adjudication of the probate judge thereon are proper and necessary evidence to establish the condition of the estate, and should be exhibited by the plaintiff, in support of his right to the possession of the gift. When not appealed from, they are conclusive upon all persons as to the matters therein appearing, in the absence of fraud.

Nor does it make any difference that the suit against the donee was commenced before these proceedings were had, if they were completed in season to be offered in evidence at the trial.

Nor does it make any difference as to the administrator's right to recover, that a portion of the debts proved against the estate accrued after the date of the gift, provided there was a sufficient indebtment to make the estate insolvent at the time of the gift.

In this case, the gift was by a consumptive, within three months at most before his death. *Held,* that the gift was so near the date of the insolvent's death, that the jury were justified by the evidence before them, in finding that he was insolvent when it was made—in the absence of any proof tending to show fraud in the proof of debts, or in the exhibition of assets, or that there had been any material change in his pecuniary circumstances subsequent to the date of the gift.

In this case, the defendant was not questioned by the plaintiff's counsel as to matters occurring before the donor's death, nor precluded from testifying to anything material that occurred subsequent thereto. *Held,* that as to matters occurring before the death of the donor, the defendant was not a witness, unless the plaintiff, the administrator of the donor, offered his testimony as to such matters. *Held* further, that he did not so offer himself, when the judge permitted the defendant's counsel to cross-examine him as to such matters, against the objection of his counsel.

Where the decedent gave to the defendant a large sum of money, which was needed for the payment of his own existing debts, and gave it partly in consideration of love and affection, and partly in consideration of her promise to nurse him until his death, the amount being out of all proportion to the value of the services, *held,* that an instruction, that if the decedent made, not such a contract as he would make as a business transaction simply, but was influenced to it in part by friendship and regard for the defendant, it would invalidate it, was not one of which the defendant could complain— that the mingling of any intention in the contract which operates a legal fraud will vitiate it.

In this case, *held,* that the defendant having rendered services to the deceased in his last illness, for which the plaintiff, his administrator, would be bound to pay, may retain out of the money given her, (by the deceased, when insolvent,) enough to compensate her for those services, to avoid circuity of action.

ON EXCEPTIONS AND MOTION.

ASSUMPSIT by the plaintiff as administrator of the estate of William Woodman, deceased, to recover the sum of $700, which he alleged was given to the defendant by Woodman, when he was insolvent.

The writ was dated February 16, 1869. The plea was the general issue.

The evidence tended to show that about the last of August, 1868, Woodman, then in declining health, solicited the defendant to stay and take care of him during his life, and agreed to give her $700, if she would do so; to which she finally agreed and stayed with him from that time till his death, December 25, 1868.

The defendant's sister testified that Woodman, some weeks before his death, told her he had given the defendant the money,

and that he had property enough left to pay all his debts, and have some left to give to his sister.

The plaintiff at the (second) trial, April term, 1874, put in his appointment as administrator, dated the first Tuesday of January, 1869; and under the defendant's objection, the inventory of the estate, the representation of insolvency dated May 3, 1870, the adjudication of the judge of probate thereon, the warrant to the commissioners of insolvency, and the adjudication thereon, the license to sell personal property, and other probate papers.

Hiram P. Carleton, one of the commissioners of insolvency, called by the plaintiff testified that he recognized the claim of Dole as one presented to the commissioners. On cross-examination he was asked whether the plaintiff made any objection to its allowance. The defendant's counsel proposed to examine the witness for the purpose of showing that Dole's claim was not justly due and proposed to introduce evidence to prove claims allowed, and not in fact due, for the purpose of showing that the estate was not insolvent. But the presiding judge ruled that the return of the commissioners, accepted by the judge of probate, was conclusive on this point, and excluded all evidence to show that claims allowed were not due, unless it was claimed that the allowance of the claims was procured by fraud. The defendant's counsel said that, as at present advised, he did not claim that the allowance was fraudulent.

The following paper signed, William Woodman, attested by a witness, and dated Jefferson, Dec. 3, 1868, was delivered to her by Woodman, in his life time: "I, the within named William Woodman, in consideration of friendship and affection, hereby give to Addie C. Weeks for her own use and benefit, the sum of seven hundred dollars."

The defendant testified that the money was paid her in September before the writing was made. Her counsel then proposed to examine her generally as to the agreement, and what was done in regard to the seven hundred dollars between her and Woodman, but the evidence was excluded.

On cross-examination a copy of the paper was shown her and she testified that she had the original at the time of Woodman's

death and claimed to hold the money by virtue of it, that she delivered it to her counsel in 1869. Her counsel then passed the original paper to the plaintiff's counsel who put it into the case, and read it to the jury.

The defendant's counsel then asked the defendant the following questions:

I. Had the money been delivered to you before the writing was ?

II. Did you claim the money before the paper was delivered to you ?

III. Was any money delivered to you when the paper was ?

IV. Whether you claim the money on any other grounds than the paper ?

The questions were objected to and excluded, on the ground that the defendant was not a competent witness to testify to what took place between her and Woodman before his death.

There was evidence in the probate proceedings tending to show that the estate of Woodman was solvent after making the gift. The administrator returned as assets aside from the $700, $499.17. The commissioners of insolvency returned a list of claims allowed of $583.68; but in this list was included an allowance of $416.48 to the administrator on his personal account in which the credit for land from Woodman to him was reckoned at $100 less than the consideration named in the deed; and a small amount was allowed for board and expenses accruing after the gift. On the other hand there was evidence tending to show, if the results finally reached in the probate court were correct, (and as the plaintiff claimed, conclusively showing,) that after the gift he had not sufficient assets remaining to pay the debts.

The defendant's counsel specially requested the following instructions to the jury :

I. That if the $700 was delivered to the defendant by Mr. Woodman as a voluntary gift, with no intent or purpose to defraud his creditors thereby, the gift would be valid against everybody except creditors whose debts existed at the time of the gift.

II. That the burden of proof is on the creditor, or the plaintiff

representing creditors, to prove that his debts existed at the time of the gift.

III. That if items of debt existing at the time of the gift, and items accruing after the gift, are mingled in one claim, and a gross sum allowed for the whole, the creditor is not in a position to recover back the gift.

The first request was given :—The second was given by adding at the end "exceeding the amount of the assets to be distributed." The third was refused. There was no evidence in the case that the defendant had used the money or received anything for interest or the use of it.

The judge, *inter alia*, charged the jury as follows :

"The law says that a gift, which a man cannot make without depriving himself of the means of paying his honest debts, is fraudulent against creditors. There may be no moral fraud in it, either in the giving or reception of it; but it simply amounts to this, that the party cannot legally hold it, if it is necessary for the payment of existing debts, and must and ought to return it, and as the whole matter, all the concerns relating to the dead man's estate are to be settled in probate court, if the estate is found to be insolvent, the gift must be deemed invalid and set aside, and the property go into the hands of the administrator; so much of it as may be found to be necessary to pay the debts and expenses of administration to be disposed of there, and the balance only, the donee would be entitled to."

"These proceedings, being had in the court whose business it is to take care of these matters, are conclusive, unless they are invalidated by fraud; and you would say that this estate was insolvent if you found, by an examination of those proceedings there, that there was not enough to pay the debts and that the debts existed at the time; and therefore the gift could not stand unless the defendant, upon whom the burden would then rest, has shown to your satisfaction that that condition of things was brought about by fraudulent practices."

"If this $700 was partly a gift from Woodman to the defendant, she could not retain it, in case the estate proved insolvent, and it was necessary for the payment of such debts. The law

would not allow a man to associate a contract of that description with a gift, to the prejudice of those he was then indebted to. The whole would have to go back into the hands of the administrator. Whatever was necessary for the payment of the debts that were then due, should be disposed of there, and the donee should look to the bond of the administrator for the protection of her rights."

"If William Woodman, believing that he had enough to pay all his debts and the defendant what he chose to and make his sister a present also, saw fit to make, not such a contract as he would make, as a business transaction simply, but being influenced to it in part by friendship and regard for the defendant, it would invalidate the proceeding."

The jury returned a general verdict for the plaintiff for $915.25, and found specially that Woodman agreed with the defendant beforehand, that if she and her sister would remain while he lived and take care of him, he would give her the $700 ; that the defendant performed the agreement on her part ; that $6.00 per week for the full time was a fair compensation for the services rendered by the defendant to Woodman, and that Woodman gave the defendant the $700 in part in consideration of friendship and affection, and not wholly for her services in taking care of him."

The defendant moved to have the verdict set aside, because it was against the special findings of the jury, and against law and for excessive damages, and she also alleged exceptions.

*J. Baker*, for the defendant.

The counsel contended that the plaintiff could not recover in this action.

I. Because an administrator cannot maintain general assumpsit under the circumstances of this case. He asked the court to review their decision reported in 61 Maine, 277.

II. Because the money was paid the defendant under a valid contract; and she performed her part of it. She must perform her contract, no matter how long the time or how difficult the task. The parties took their chances, which happened to turn in her favor.

III. It is said this was a voluntary transaction, that "friend-

ship and affection constituted a part of the consideration"; but this finding is inconsistent with the first and second special findings, in which the jury found there was a contract and that it was fully performed by the defendant.

The counsel argued that the jury were misled by an error in the charge "that if the matter of friendship and affection entered in any way into the making of that contract it would invalidate the whole transaction ; " "being influenced to it in part by friendship and regard for defendant, it would invalidate the proceeding." This instruction he submitted was too broad and calculated to mislead the jury, because it did not make the suitable distinction between inducements to a contract and the consideration of a contract.

The counsel contended that the probate proceedings were inadmissible to prove that Woodman was insolvent at the exact time of delivering this money or that the suit was in behalf of prior *bona fide* creditors, because those proceedings took place subsequent to the date of the writ, and because they were *ex parte*, and because an order rendering an estate insolvent, is in practice, and was in this case, made by the judge without evidence or inquiry on the petition of the administrator. The petition in this case does not state that the estate is insolvent, but only that the petitioner is "apprehensive that the estate will be insufficient to pay the debts."

The counsel contended that even if it were the law that the gift was void as to prior creditors only, the ruling of the court, that the whole of it should go into the hands of the administrator to pay the expenses of administration and all the debts, subsequent as well as prior, out of the fund, was inconsistent therewith.

The other points made by the counsel are sufficiently indicated in the opinion.

*A. P. Gould & J. E. Moore*, for the plaintiff.

BARROWS, J. To secure a just and legal settlement of all that pertains to the property, liabilities and affairs of persons deceased, the business is confided to a court of special jurisdiction acting under statute provisions at once comprehensive and minute, most

of them of long standing and approved practical worth, and seldom invaded by the rage for legislation which is so apt in avoiding one evil to create a score of new ones.

Under this system the property of the deceased goes into the hands of persons who give bond for the faithful performance of their duties, and thus become the representatives, not only of the deceased, but to a certain extent of all those who have any interest in or claims upon his property, however arising, and whether growing out of the acts or contracts of the deceased, or his relations to surviving kindred, friends or objects of his bounty.

A cardinal principle of this system is to secure, as far as may be, a just and equitable distribution of the property among those who have claims on it, giving priority to general creditors over donees, heirs or legatees, and to certain classes of creditors, holding preferred claims, over the general creditors.

But in order that the person charged with this distribution under the direction of the probate court may be enabled to make it, it is necessary that he should have the aid as occasion may require of the courts of common law and of equity to obtain possession of all which ought rightfully to be the subject of the distribution. And in doing this it follows from the fact that he is the representative of all who have an interest in the distribution, that he is entitled to any remedy which any of those whom he represents might have against those who are wrongfully in possession of the fund, or any portion of it. Hence as the representative of creditors he may have remedies both at law and in equity which would not have been available to the deceased. *Caswell* v. *Caswell*, 28 Maine, 232. *Martin* v. *Root*, 17 Mass., 222. *Holland* v. *Cruft*, 20 Pick., 321. *Fletcher* v. *Holmes*, 40 Maine, 364.

While the decedent, had he lived, would have no right to reclaim a gift of money on the ground that it was needed for the payment of existing indebtment, his creditors could pursue it in his life time in the hands of the donee; and so may his administrator upon proof that without it the property of the donor when he made the gift was insufficient to pay what he then owed.

When such proof is forthcoming the law will imply a promise, on the part of the donee of the money, to do what the law re-

quires, in an action for money had and received, brought by the administrator, as it will imply such promise even against the protestation of the defendant in other cases where money is wrongfully withheld. *Howe* v. *Clancey,* 53 Maine, 130. The question as to the maintenance of the action by the administrator against the donee in case of insolvency of the estate was fully and ably argued and carefully considered by the court with the aid of an elaborate dissenting opinion when this case was first presented, 61 Maine, 277, the main subject of discussion being whether the remedy was not confined to actions by individual prior creditors against the donee, or if any process could be maintained by the administrator whether it should not be in equity.

We think that the symmetry of the law is best preserved, that a multiplicity of suits, and a failure of all remedy for what in many cases might be a grievous wrong may be best avoided, by the decision then reached upon this point, and we adhere to it accordingly.

A donee cannot complain that in place of being subjected to as many suits as there were creditors wronged by his acceptance of the gift, he is required to take his place among other parties having claims upon the estate, protected by the bond of the administrator, and entitled to receive from his hands his just due in the distribution which takes place under the direction of the probate court.

That is the proper *forum* where the amount to which the donee is entitled shall be finally determined.

The act of the donor has given him a claim upon the money, subject only to the superior claims of those who, according to legal principles and statute provisions regulating probate proceedings, have a better right. That is all which the donor could do, and it is not for the donee to withhold the possession of the fund from the administrator, when without it the demands of those to whom the donor was indebted at the time of the transaction cannot be fully paid. The gift is void as to all that class of creditors, and must be so declared at the suit of the administrator who represents them. *Abbott* v. *Tenney,* 18 N. H., 109.

To ascertain whether the money ought to be placed in the hands

of the administrator, because a part or the whole of it is required for the payment of those having claims superior to those of the donee, is the primary and chief object of a suit of this description.

How much of it is wanted, and how much the donee shall ultimately be entitled to receive, if anything, are questions which will ordinarily belong to that jurisdiction which was created for the express purpose of adjusting and closing up all the transactions of the deceased. This view of the case will be found to dispose of most of the questions raised at the trial.

When an estate is settled in probate court as an insolvent estate, the claims of all creditors are made to depend upon their pursuing the statute mode of presentation and proof. They can maintain no action against the administrator, except in conformity with those provisions, even though the estate should ultimately prove solvent. *McNally* v. *Kerswell*, 37 Maine, 550. *Bates* v. *Ward*, 49 Maine, 87.

It is obvious that in cases of insolvency, any remedy which the individual creditor should undertake to pursue against the fraudulent donee would be liable to be greatly retarded, and perhaps ultimately defeated by force of these provisions as to the mode in which he shall proceed against the estate of his deceased debtor. The aim of the law seems to be to produce an equitable *pro rata* distribution of all that remains of the dead man's property or effects, and this cannot be done by leaving assets situated like these to be made available only at the option of prior creditors and their individual disposition to litigate. There are doubtless numerous precedents for holding fraudulent donees to answer to the suits of individual creditors, as administrators in their own wrong. But those who are thus liable are by statute made liable to the suit of the legal administrator. R. S., c. 64, § 37.

And it is in this way alone that the fund can be made available for all who are interested in it, in equal and just proportions, by a single suit.

The defendant complains that the record of the proceedings in insolvency was admitted to show that the money which she holds was needed for the payment of debts of the deceased, and that

unless impeached for fraud it was held conclusive as to the matters therein appearing.

We think it was proper evidence, and in a case of this sort indispensable evidence to establish the condition of the estate. To undertake to do it by proof of the various debts would be introducing too many subordinate issues to be properly canvassed in a single trial to the jury.

That it is legitimate evidence may be considered as settled. *Bates* v. *Avery*, 59 Maine, 354.

It is also well settled that the decrees of the probate court touching matters within its jurisdiction when not appealed from are conclusive upon all persons. *Simpson* v. *Norton*, 45 Maine, 281. *Loring* v. *Steineman*, 1 Metc., 204. *Merriam* v. *Sewall*, 8 Gray, 316. *Potter* v. *Webb*, 2 Maine, 257.

Nor does it make any difference that these proceedings were had in the present case subsequently to the commencement of the suit.

If they are had so as to be put in evidence in the form of conclusive adjudications at the trial it is in season. To postpone the commencement of the suit until their completion might not unfrequently make the remedy worthless.

The defendant's counsel complains that she was not allowed to go into an inquiry as to each of these creditors' demands, and to put the plaintiff to the proof of them in this suit, after they had been allowed against the estate by the commissioners of insolvency, and that she ought not to be concluded by the adjudication of the probate court upon those matters. We think there is no valid reason why she should not be so concluded in the absence of fraud, and the ruling allowed her to show fraud, if there had been any.

Shaw, C. J., remarks in *Loring, adm'r,* v. *Steineman*, 1 Metc., p. 208, as follows: "But in many cases, courts of peculiar jurisdiction have jurisdiction of the subject matter absolutely, and persons are concerned incidentally only according to their respective rights and interests;" and he instances a question of prize, where a court of admiralty, "by adjudicating upon that question settles it definitively in regard to all persons interested in that question whether they have notice or not." He adds "and we think the distribution of an intestate estate is analogous." Under our statute

provisions relative to the establishment of claims against an insolvent estate in the probate court, we think a similar doctrine must prevail with regard to the results reached. In the absence of fraud they stand as conclusive upon all persons whose rights may be affected thereby. Hence the legislature have provided carefully for the right of all whose interests are liable to be affected, to appeal and secure further investigation.

Not only is the general right of appeal from decrees of probate courts conferred upon all whose interests in property are acted upon, but a special right to appeal from the findings of commissioners of insolvency was given by c. 113, § 10, Laws of 1870, and R. S., c. 66, § 11, to heirs-at-law and all creditors, the spirit of which plainly includes donees, whose claims are subject to reduction by reason of existing insolvency, and legatees under a will.

But independently of all this, there is good reason in principle and authority for holding the proceedings of a court of this peculiar jurisdiction binding upon the rights of those whose interests they may incidentally affect, nor does this in any manner infringe any constitutional right to trial by jury. Defendant's counsel misinterprets the ruling as to the admissibility of evidence to impeach the report of the commissioners of insolvency, and to disprove the fact of insolvency. It was not confined to misconduct of the administrator in suffering the allowance of wrongful claims, or withholding assets. When the defendant proposed to put in evidence to show that the claims allowed by the commissioners were not due, it was excluded "unless it was claimed that the allowance of the claims was procured by fraud." But any expectation of showing that the allowance was procured by fraud was disavowed.

The door was opened quite wide enough so far as the ruling went; for mere evidence tending to defeat the claim, unless it conclusively showed it to be unfounded and unjust within the knowledge of the claimant or the tribunal, would be no cause to impeach the adjudication as fraudulent or void. If the doctrine of *Caswell* v. *Caswell*, 28 Maine, 232, upon this matter of impeaching the adjudication of the commissioners of insolvency, can be supported, it must be limited to cases where, as there, the illegality of the claim appears upon its face. It was not necessary to the

decision, for the case was disposed of when the court determined that, while an administrator of an insolvent estate might in certain cases be entitled to the aid of the court sitting in equity to obtain property conveyed by the intestate to defraud his creditors, in order that it might be appropriated to the payment of debts, such process could not be maintained by one of the creditors who had proved his claim against the estate.

The defendant further objects that supposing the proceedings in insolvency admissible and importing absolute verity, they are insufficient to make it appear that Woodman was insolvent when he made this gift and therefore insufficient to establish the right of the plaintiff to have the gift returned as assets of the estate for the payment of debts and charges of administration. It is easy to suppose cases where this would be so. But the evidence introduced here shows the date of the gift very near the time of Woodman's decease, and during his last illness, and that the bulk of the debts which he owed, (to an amount considerably exceeding all that he possessed including this money) originated prior to this transaction. In the absence of any evidence tending to show that he gained or lost or transacted any considerable amount of business after this, we think there is enough to authorize the jury to find, as the instructions required, that the estate was insolvent by reason of debts existing at the time when the gift was made. The jury could not have failed to understand that it was the solvency of the donor at that point of time which was in question, and that it was incumbent upon the plaintiff to prove that he was insolvent then.

It should be understood that it is not the representation of insolvency and the decree of the judge of probate for the appointment of commissioners which is regarded as conclusive evidence of the fact of insolvency. The evidence would be imperfect without the report of the commissioners, and the accompanying documents and the decree thereon, together with the other proceedings establishing the amount of the assets. In cases where a longer time had elapsed between the gift and the decease of the donor, of course other evidence would be necessary to make out what the plaintiff is bound to prove in order to entitle him to a verdict. But these

proceedings in insolvency in the probate court are the proper foundation and are conclusive, as to the facts therein set forth unless impeached (as all judgments are liable to be) for fraud. Nor is it of any importance that some portion of the debts thus proved before the commissioners of insolvency accrued after the date of the gift.

The proof shows and the jury found that, unlike the case of *Usher* v. *Hazeltine*, cited for the defendant, Woodman was in debt beyond his means of payment when he gave this money to the defendant. The proper distribution is to be made, as we have seen by the probate court, and with the data before them, it is not perceived that there will be any difficulty in arriving at a just apportionment.

Under existing statutes the defendant could not be a witness as to what occurred before the death of Woodman, unless the administrator offered his own testimony in relation to it. R. S., c. 82, § 87. Nor as to such matters does chapter 145, Laws of 1873, aid the defendant. The suit was pending when the statute was passed. Nor was the witness prevented from stating any thing which occurred since the death of Woodman that was material. Nor was she questioned by plaintiff's counsel as to what occurred before Woodman's death.

The defendant further complains that there was an inconsistency in the finding of the jury that Woodman agreed beforehand with the defendant that if she would take care of him while he lived he would give her the $700 and that she performed her part of the agreement, and the further finding that he gave her the $700 in part in consideration of friendship and affection and not wholly for her services, and that this inconsistency was brought about by erroneous instructions upon this point.

We think the instruction taken as a whole so far as it relates to the effect of friendship and affection upon the validity of the contract was correct.

If the making over of the $700 to the defendant by Woodman was partly a gift; or to use the language of the instruction, "if Woodman in and by that transaction made, not such a contract as he would make as a business transaction simply, but was influenc-

ed to it in part by friendship and regard for the defendant it would invalidate it."

The mingling of any intention or design in the contract which the law regards as fraudulent will vitiate it. *Brinley* v. *Spring,* 7 Maine, 241. *Welcome* v. *Batchelder,* 23 Maine, 85. *Holland* v. *Cruft,* 20 Pick., 321. *Martin* v. *Root,* 17 Mass., 222. It is true that in the cases just cited there was more or less testimony indicative of positive fraudulent purpose and design. But the contract is just as much invalidated as to all those against whom it would operate as a fraud in law, as though there had been actual fraudulent intent on the part of the donor : while in the absence of such fraudulent purpose participated in by the donee the same results would not follow in respect to the rights of heirs that are suggested in *Martin* v. *Root ;* but the right of the donee, innocent of all fraudulent design, would be protected in the probate court to such distributive portion, if any, as she might be entitled to by virtue of the donor's good will evinced by the act of gift. This right was recognized in the instructions given. We do not perceive that the substantial rights of the defendant were infringed at the trial save in one particular. She had rendered services in pursuance of the agreement she made with Woodman in connection with the reception of the gift which the jury have found were worth six dollars a week from the last of August to Dec. 25, when he died. They were rendered during his last illness and in the expectation of payment. They constituted a preferred claim against his estate which the administrator would be obliged to pay in full before proceeding to pay the general indebtment. Such claims need not be laid before the commissioners. *Flitner* v. *Hanley,* 18 Maine, 270. S. C., 19 Maine, 261.

Circuity of action should be avoided.

Her liability here is strongly akin to that of an administrator in his own wrong and he would have a right to retain whatever sums received by him which, if withdrawn from his hands, the rightful administrator would be compelled to pay. *Tobey* v. *Miller,* 54 Maine, 480.

The plaintiff must remit $102 and interest thereon from the

date of the writ, February 16, 1869, to the date of the verdict at the April term, 1874, as of the latter date, and thereupon the entry will be　　　　　*Motion and exceptions overruled.*

APPLETON, C. J., WALTON, DICKERSON, DANFORTH and PETERS, JJ., concurred.